MALLOY v. SOUTHERN CITIES DISTRIBUTING CO.

No. 4327.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1932.

Barnette & Roberts, of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

DREW, J.

This is a companion suit to the suit of Koch v. Southern Cities Distributing Co., 18 La. App. 664, 138 So. 178, decided by this court on December 9, 1931. The issues are identical, and the facts, except those pertaining to the injuries and some additional evidence regarding an experiment involving the breaking of the threads in the connection of the pipe offered by defendant, are also identical.

The suits arose out of an explosion of gas occurring on the morning of January 12, 1930, in a building owned by A. & J., Inc., at the corner of Louisiana avenue and Milam street, in the city of Shreveport. Plaintiff was engaged in the operation of the pharmaceutical department of the Hawkins Drug Store, which occupied the corner store of the building in which the explosion occurred. At the time of the explosion, plaintiff was at work on the mezzanine floor, about seven feet above the main floor. The explosion threw him to the main floor. He alleged serious injuries for which he claims damages of the defendant.

He alleged as acts of negligence on the part of defendant that it had allowed natural gas to escape from its mains across the street from this building, which gas penetrated along the service pipe to the sidewalk, and thence under the sidewalk into the basement of the building in which the Hawkins Drug

Store was located; that the gas accumulated in the basement where the explosion occurred.

Defendant filed an exception of no cause of action, which was overruled by the lower court and is not urged here. It then answered and denied liability, denied that the gas escaped from its main or that it was in any way responsible for the explosion. It further alleged that the basement of the building was constructed so there was no avenue of escape for gas that might accumulate in the basement, and that the owner of the building was negligent in so constructing said basement.

The case was tried before a jury, and resulted in a judgment for plaintiff, as prayed for, and defendant has appealed.

On the trial of the case, plaintiff offered evidence to prove the injuries he received, and filed in evidence the entire record, testimony and all, offered in court in the case of Koch v. Southern Cities Distributing Company.

Defendant offered evidence to prove that plaintiff was not injured and damaged, as alleged, and then offered two witnesses who testified that they had made an experiment with pipe similar to that used by the defendant company for its main and connections, at the time of the explosion. It claimed this experiment completely destroyed the theory and finding of this court in the Koch Case, based partly upon the testimony of the city engineer. Defendant's counsel in their brief have the following to say on this subject: "The branch of this court which decided the Koch case laid great importance upon the fact that only a flake was broken out of the main, and that there was no rupture of the threads on the service tee. On this question of fact we refer the court to the testimony of the witness, M. J. Jackson, found on pages 83 to 88 inclusive, and also to the testimony of the witness, J. W. Lasseter, found on pages 89 to 92 inclusive. We also refer the court to the piece of pipe and the service tee which are filed in evidence in this case. By referring to this pipe and this connection, and by referring to the testimony of the two witnesses just named, the theory of the court is completely destroyed. These witnesses took a piece of pipe which was the same kind of pipe, and the same size of pipe that was used for the gas main. They took the same kind of tee that had been used to make the connection, and screwed it into the pipe so that the end of the tee was flush with the inside of the pipe. They then took a sledge hammer and struck the tee, applying the force from the same direction that the force from the explosion would have exerted on the service tee in the ground, and what was the result? The pipe and the tee are here to speak for themselves. There was no rupture of the threads of the tee. On one experiment a small flake was broken out of the pipe, and on another experiment a large piece was broken out of the pipe. The record is full of evidence to the effect that the service tee is of stronger and tougher material than the pipe; and there was no chance of rupturing the threads of the tee. The theory of the City Engineer did not check out."

While the testimony offered is of some force, it is not sufficient to destroy or upset the other evidence in the record upon which this court based its finding. The test was not made under similar circumstances. The pipes were not buried beneath the ground. The force in one instance was applied by an eight-pound sledge-hammer; in the other, there was an explosion of gas which was so great as to destroy almost completely a brick building and to rock other brick buildings a block away. It cannot be contended that a blow from a sledge-hammer in the hands of a man is similar to such an explosion, as regards the force applied. Upon this new testimony defendant relies principally for a reversal by this court.

The preponderance of the testimony is that defendant is responsible for the explosion caused by its negligence, and is liable for the accident and resulting injury to plaintiff.

This court fully discussed the facts of the case, as well as the law applicable, in the case of Koch v. Southern Cities Distributing Co., reported in the 18 La. App. 664, 138 So. 178. It is unnecessary to again discuss it. For the reasons assigned therein, we find the defendant is liable to plaintiff for damages received in said accident.

Plaintiff itemizes his damages as follows:

| | |
|---|---|
| Injury to heart and nervous system. | $3,000.00 |
| Pain and suffering | 1,000.00 |
| Loss of wages | 500.00 |
| Medical services | 500.00 |
| Total | $5,000.00 |

■ Plaintiff and his partner were operating the pharmaceutical department of the drug store as a partnership. Each would draw the necessary money from the profits to live on and occasionally would divide the profits. There was no stipulated salary fixed for either, and the record discloses that the partnership has instituted suit for loss of the business and profits. To award damages for loss of salary would do violence to the record. The award of $500 for loss of salary is erroneous.

■ The testimony on the claim for medical service is that no bill has been presented by the doctor who treated plaintiff, and that the doctor did not expect to collect until such time as plaintiff was successful in this litigation. The doctor thinks a fair estimate of the value of services rendered up to the time of trial is $150. Plaintiff has not been called upon to pay any amount for medical service, and may never be called upon. Damages for this item should not have been allowed.

■ The award of $1,000 for pain and suffering is not excessive. Plaintiff has suffered with his heart ever since the accident. He was cut by flying glass on the face and chest and numerous other places at the time of the accident, and remained in bed for a few days. He still has hot flashes at intervals, often causing him to take to his bed for a half day at a time. He cannot bear any pressure near his heart. The carrying of a handkerchief in his upper left-hand pocket causes him pain. His heart has been a constant annoyance to him since the time of the accident. The pain and suffering cannot be confined by the court to the superficial cuts received and the few days he was forced to remain in bed. The pain and suffering, due to his heart, the hot flashes, the racing heart, and his discomfort caused by high blood pressure, as well as by nervousness, caused by the accident, must be considered in determining the amount of damage due for pain and suffering.

■ The award of $3,000 for injury to the heart and nervous system is likewise not excessive. Defendant contends that the condition of plaintiff at the time of trial was not caused by the accident, and offered two doctors who testified that they did not think the accident caused the condition of plaintiff. However, they failed to state what has caused the condition; and one of them frankly states that he does not know. Neither has ever had any experience with patients injured by explosions. Plaintiff offered one doctor who treated him, and who is positive that plaintiff's condition is due solely to the accident. Plaintiff's wife, a trained nurse, is also positive that plaintiff's trouble was caused by the accident; that he had none of his previous troubles before the accident, and has been in his present condition, and worse, since the accident. Most of the causes suggested by the doctors for the defense as to what could have brought on plaintiff's trouble are shown by the doctors testifying for plaintiff not to exist. Neither of defendant's doctors examined plaintiff for the causes they state could exist and cause his present condition. They both admit that plaintiff's heart trouble, if he had it before the accident, could have been greatly accelerated by the accident. The doctor who treated plaintiff immediately after the accident and at intervals until the day of trial found plaintiff's condition, just after the accident and during the period of two months thereafter, to be as follows: "A. His heart sitting at that time was 114, standing 132,

after light exercise 144. Blood pressure 152 over 92, has some enlargement of the heart. Tonsils and urine appeared negative. March 6th, heart sitting 72 to 104; standing 96 to 122 after sitting up exercise, that is light exercise, 96 to 122. The characteristic thing about the heart now is that it changes its rate frequently from one to ten seconds, in a ten-second period, but not a change of rate without reference to exercise or a change of position. There is some slight enlargement of the heart. Blood pressure 156 over 96, however the blood pressure was lowered went from 140 over 90 and one is 160 over 96. That was within a period of two months that I found that variation. The variation of the heart beats and the condition of the blood pressure indicates some degeneration of the heart muscles."

He testified that his condition at the time of trial was as follows: "A. Well, the condition there now is that the heart will go along say at seventy-two, then suddenly, and without warning, whip up and rise to a beat of 122, inside of five or six seconds."

He contends that the explosion caused an acute dilation of the heart, thereby causing leaks; that it also caused nerve injury. He explained in detail, on cross-examination, the manner in which an explosion affects the human body.

The jury found that plaintiff's condition was caused by the explosion, and we are not convinced that there is any error in its finding in this respect, and we will not disturb it.

Plaintiff contends that under his prayer for general and equitable relief the court is justified in allowing the full amount prayed for, although we should not find that some of the items alleged have been established by the evidence; in other words, that, although he claims only $3,000 for heart injury and injury to the nervous system, we could allow $4,000 for that injury, if we rejected the demands for salary and medical bill.

■ Plaintiff might have been entitled to a greater award for the alleged and proved injury, but, under the itemized statement of his damage, he has only claimed $3,000, and he is bound by his pleadings.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by decreasing the amount of the award to plaintiff from $5,000 to $4,000, and, as amended, the judgment of the lower court is affirmed, with costs.